UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOLLAR RENT A CAR, INC., an
Oklahoma        corporation,
THRIFTY RENT-A-CAR SYSTEM,
INC.,      an      Oklahoma
corporation, and THE HERTZ
CORPORATION,   a   Delaware
Corporation,

        Plaintiffs,

v.                              Case No: 2:16-cv-363-FtM-29CM

WESTOVER CAR RENTAL, LLC, a
Delaware  limited  liability
company,  PHILIP  R.  MOOAR,
CARL  P.  PALADINO,  JOEL
CASTLEVETERE,        ENRICO
D'ABATE,   and   MICHAEL  G.
DILLON,

        Defendants.

---

**OPINION AND ORDER**

        This matter comes before the Court on Defendants' Motion to

Dismiss Plaintiffs' Second Amended Complaint for Lack of Personal

Jurisdiction and Alternative Motion to Transfer Venue (Doc. #59)

filed on June 6, 2017.  Plaintiffs filed a Response in Opposition

(Doc. #60) on June 20, 2017, and Defendants filed a Reply (Doc.

#63) on June 30, 2017.  For the reasons set forth below,

Defendants' Motion to Dismiss is granted without prejudice.

**I.**

        This case arises out of a terminated franchise relationship

in the rental car industry.  Plaintiffs Dollar Rent a Car, Inc.

(Dollar), Thrifty Rent-a-Car System, Inc. (Thrifty), and The Hertz

Corporation (Hertz) filed a six-count Second Amended Complaint (Doc. #58) against Westover Car Rental, LLC (Westover) and Westover's five individual owners, Philip R. Mooar, Carl P. Paladino, Joel Castlevetere, Enrico D'Abate, and Michael G. Dillon (collectively, the Individual Defendants). The first five counts allege breach of various agreements by various defendants, while the sixth count seeks a declaratory judgment as to Defendants' post-termination obligations not to compete. The agreements at issue are: (1) Westover's March 21, 2006 License Agreements with Dollar (Doc. #58-1) and Thrifty (Doc. #58-4) and a December 20, 2006 Amendment to those Agreements (Doc. #58-2) (collectively, the License Agreements); (2) an April 30, 2010 Revised Personal Guaranty Agreement (the Personal Guaranty) that the Individual Defendants executed with Dollar (Doc. #58-3); and (3) a July 31, 2015 Vehicle Purchase Participation Agreement (the VPPA) between Westover and Hertz (Doc. #58-5).[1]

Subject matter jurisdiction is premised on diversity of citizenship.[2] With respect to personal jurisdiction, the Second Amended Complaint avers that Westover and each Individual

---

[1] By way of background, it appears Hertz acquired Dollar and Thrifty in or around May 2013. (Doc. #60-1, pp. 3, 11.)

[2] The Court dismissed Plaintiffs' original Complaint (Doc. #1) and First Amended Complaint (Doc. #35) without prejudice for lack of subject matter jurisdiction because the allegations did not leave clear whether Westover LLC was a citizen of Florida, Oklahoma, or Delaware, as would destroy complete diversity of citizenship. (Docs. ## 34, 55.) The Second Amended Complaint adequately alleges that all Defendants are New York citizens.

Defendant contractually consented to jurisdiction in Florida. As to Westover only, the Complaint also alleges that the Court has specific personal jurisdiction pursuant to two provisions in Florida's long-arm statute, Fla. Stat. § 48.193.

Defendants move to dismiss the Second Amended Complaint on the ground that the Court lacks personal jurisdiction over Westover and each Individual Defendant. Alternatively, Defendants request the case be transferred to the Buffalo Division of the United States District Court for the Western District of New York. Plaintiffs oppose both dismissal and transfer but believe any transfer should be to Tulsa, Oklahoma.

## II.

The jurisdictional basics are well established. To hear a case, a federal court must have jurisdiction over both the subject matter of the action and the parties to the action. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584, (1999). Absent either, "the court is powerless to proceed to an adjudication." Id.

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant if (1) personal jurisdiction is authorized under the forum state's long-arm statute and (2) the exercise of such jurisdiction comports with constitutional due process. Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203 (11th Cir. 2015); Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). "The Florida long-arm statute provides two bases for the exercise of personal

jurisdiction: specific and general jurisdiction." PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010). "[G]eneral jurisdiction refers to the power of the forum state to exercise jurisdiction in any cause of action involving a particular defendant, regardless of where the cause of action arose," id. at 808 n.8, and is rooted in the fact that a defendant has "engaged in substantial and not isolated activity within [Florida]." Fla. Stat. § 48.193(2). Specific jurisdiction, in contrast, refers to "jurisdiction over causes of action arising from or related to a defendant's actions within the forum." PVC Windoors, 598 F.3d at 808; see generally Fla. Stat. § 48.193(1).

Unlike subject matter jurisdiction, "the requirement that a court have personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 704 (1982). That is, a party may impliedly or expressly consent to a particular court's exercise of jurisdiction, irrespective of whether personal jurisdiction would otherwise be authorized under the applicable long-arm statute and satisfy due process. Id. at 703; see also Ruhrgas, 526 U.S. at 584; Alexander Proudfoot Co. World Headquarters v. Thayer, 877 F.2d 912, 919-21 (11th Cir. 1989).

A plaintiff suing a nonresident defendant bears both the initial burden of alleging a prima facie case of personal jurisdiction and, if that jurisdiction is challenged, the ultimate

burden of establishing that its exercise is proper.  Louis Vuitton
Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1350 (11th Cir. 2013);
Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1217 (11th
Cir. 2009).  If the defendant raises more than mere "conclusory
assertions" that personal jurisdiction is lacking,[3] the plaintiff
must then "produc[e] evidence supporting jurisdiction."  Mosseri,
736 F.3d at 1350; see also Posner v. Essex Ins. Co., 178 F.3d 1209,
1215 (11th Cir. 1999).

### III.

The Second Amended Complaint avers that the Court has personal
jurisdiction over Westover and the Individual Defendants because
all have contractually consented to – and waived the right to
challenge - personal jurisdiction in Florida.  (Doc. #58, ¶¶ 17-
18.)  The Complaint asserts that personal jurisdiction exists as
to Westover for the additional reason that Westover "has engaged
in actions . . . that constitute sufficient contacts with the State
of Florida."[4]  (Id. ¶ 17.)  Defendants disagree that they have
contractually consented to personal jurisdiction in Florida.
Defendants have also filed affidavits disputing the contention

---

[3] Typically, the defendant must submit affidavit evidence
"contain[ing] specific declarations within the affiant's personal
knowledge."  Mosseri, 736 F.3d at 1350.

[4] While this sentence appears speak to the Court's exercise of
general personal jurisdiction over Westover, Plaintiffs' Response
in Opposition to the Motion to Dismiss leaves clear that Plaintiffs
assert only specific personal jurisdiction.  In any event, the
Court finds no basis in the Second Amended Complaint to conclude
that Westover "engaged in substantial and not isolated activity"
in Florida, as required by Fla. Stat. § 48.193(2).

that the Court has specific jurisdiction over Westover pursuant to Florida's long-arm statute.

Erie principles[5] dictate that when, as here, a federal court sitting in diversity is asked to enforce a contractual jurisdiction clause, the court must assess whether such a clause is enforceable under the forum state's law.  Alexander Proudfoot, 877 F.2d at 919.  However, as with any challenge to personal jurisdiction, the district court first "must determine 'whether the allegations of the complaint state a cause of action.'"  PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010) (quoting Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002)); see also Taylor v. Moskow, --- Fed. App'x ---, 2017 WL 4899742, at *2 (11th Cir. Oct. 31, 2017) (per curiam) (affirming the district court's finding that because the complaint "failed to state a claim for conspiracy, that count was beyond the reach of Florida's long-arm statute").  The Court thus begins there.

**A.  Pleading Sufficiency of the Second Amended Complaint**

> **1.  Breach of License Agreements and Personal Guaranty (Counts I, II, & V)**

Counts I, II, and V allege breaches of the License Agreements and Personal Guaranty.  Count I is based on Westover's alleged breach of its obligation to pay Dollar/Thrifty sums due under the License Agreements.  Counts II and V allege that the Individual Defendants breached the Personal Guaranty by, respectively,

---

[5] Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

refusing compensate Dollar/Thrifty for the damages suffered as a result of Westover's breaches of the License Agreements, and failing to provide Plaintiffs with timely notice that Westover was terminating the License Agreements.[6]

Under Florida law, "[t]he elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999); Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So. 2d 737, 740 (Fla. 5th DCA 2000). Defendants have not challenged the pleading sufficiency of Counts I, II, and V, and the Court is satisfied that the Second Amended Complaint adequately alleges breach of the License Agreements and Personal Guaranty.

## 2. Declaratory Judgment (Count VI)

Count VI seeks a declaration, pursuant to 28 U.S.C. § 2201, as to the parties' obligations following Westover's termination of the franchise relationship. Specifically Dollar and Thrifty request a declaration that, contrary to Defendants' assertion that they have been released from any such obligation, Defendants are in fact bound to abide by the License Agreements' post-termination covenants not to compete.

"[A] declaratory judgment may only be issued in the case of an 'actual controversy.' That is, under the facts alleged, there

---

[6] Count IV alleges a breach of the Personal Guaranty arising out of the Individual Defendants' failure to compensate Hertz for the damages suffered as a result of Westover's alleged breach of the VPPA. The adequacy of this claim is discussed below, in connection with the VPPA breach claim (Count III).

must be a substantial continuing controversy between parties having adverse legal interests." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). Based on the allegations in the Second Amended Complaint, the Court finds there exists a substantial and continuing "actual controversy" between the parties as to the applicability of the non-compete provisions.[7] Plaintiffs have thus adequately stated a claim for declaratory relief.

### 3. Breach of the VPPA (Counts III and IV)

Count III alleges that the VPPA required Westover "to purchase and pay for a certain number of vehicles that were agreed to between Westover and Dollar/Thrifty" (Doc. #58, ¶ 51), and that "[a]fter agreeing to purchase 70 vehicles in one round and 65 vehicles in another round, Westover attempted to cancel those orders and refused to take delivery or pay for them." (Id. ¶ 52.) Count IV is based on the Individual Defendants' failure to compensate Hertz for the damages caused by this alleged breach, as required under the Personal Guaranty.

While Defendants have not exactly argued that Count III fails to state a claim, they do contend that the VPPA imposes no obligation on Westover to purchase any vehicles and, in fact, "expressly prohibits any orders of vehicles." (Doc. #59, p. 14.) According to Defendants, the VPPA "is only an agreement to agree in the future regarding vehicle orders and the terms thereof.

---

[7] The Court observes that the Amendment to the License Agreement does contain a limited waiver of the non-compete provision. (Doc. #58-2, ¶ 2.)

Whatever orders and/or payments for vehicles that may have been
made by Westover were . . . [made] pursuant to a separate written
vehicle supply agreement which has not been produced by Plaintiffs
and which is not a part of this lawsuit."[8]  Id.  Defendants, in
other words, do not believe any non-performance breached the VPPA.

Based on the available materials, the Court agrees.  Even
assuming the VPPA is an enforceable contract under Florida law[9]
and accepting as true the allegation that Westover placed an order
for vehicles which it later cancelled, that cancellation did not
materially breach the VPPA.  To the contrary, the express terms
of the VPPA leave clear that Westover's failure to "purchase its
full allocation of vehicles" instead "constitute[s] a material
default *under the License Agreement*."  (Doc. #58-5 (emphasis
added).)  Since there was no breach of the VPPA (Count III), the
Individual Defendants in turn had no obligation under the Personal
Guaranty to compensate Hertz (Count IV).

Because the Second Amended Complaint does not state a claim
for a material breach of the VPPA, Counts III and IV are "beyond
the reach of Florida's long-arm statute."  PVC Windoors, 598 F.3d

---

[8] The VPPA states that "Hertz and [Westover] shall mutually agree
in writing regarding the number, make and model of vehicles to be
allocated" to Westover under a **separate** "vehicle supply agreement"
and prohibits Westover from submitting any orders, absent such
mutual agreement.  (Doc. #58-5.)

[9] Under Florida law, "[a] mere agreement to agree 'is unenforceable
as a matter of law." Aldora Aluminum & Glass Prod., Inc. v. Poma
Glass & Specialty Windows, Inc., 683 Fed. App'x 764, 768 (11th
Cir. 2017) (per curiam) (quoting ABC Liquors, Inc. v. Centimark
Corp., 967 So. 2d 1053, 1056 (Fla. 5th DCA 2007)).

at 809; <u>Schwab v. Hites</u>, 896 F. Supp. 2d 1124, 1134 (M.D. Fla. 2012); <u>cf.</u> <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 463–64 (1985) ("The State of Florida's long-arm statute extends jurisdiction to any person . . . who, *inter alia,* breaches a contract in this state by failing to perform acts required by the contract to be performed in this state, **so long as the cause of action arises from the alleged contractual breach.**" (emphasis added and internal alterations and quotation omitted)). As no cause of action involving the VPPA is properly before the Court, the Court will not consider that agreement in assessing personal jurisdiction.

The Court now turns to the merits of Plaintiffs' claim that all Defendants have contractually consented to and/or waived the right to challenge the exercise of personal jurisdiction in Florida.

**B. Consent to Personal Jurisdiction in Florida**

**1. Fla. Stat. § 48.193(1)(a)(9)**

"[T]here was a time when Florida did not authorize the exercise of jurisdiction based upon consent alone." <u>Corp. Creations Enters. LLC v. Brian R. Fons Attorney at Law P.C.</u>, 225 So. 3d 296, 300 (Fla. 4th DCA 2017). Indeed, prior to 1989, a "provision for submission to in personam jurisdiction merely by contractual agreement" was "[c]onspicuously absent from [Florida's] long arm statute." <u>McRae v. J.D./M.D., Inc.</u>, 511 So. 2d 540, 543 (Fla. 1987). The Florida legislature has since amended

the long-arm statute to "grant[] parties . . . the right to confer personal jurisdiction by agreement." Jetbroadband WV, LLC v. MasTec N. Am., Inc., 13 So. 3d 159, 163 (Fla. 3d DCA 2009).

However, one does not submit to the jurisdiction of the Florida courts merely by signing an agreement containing a clause conferring such jurisdiction. Instead, the agreement must comply with all the requirements of Fla. Stat. § 685.101 and Fla. Stat. § 685.102. See Fla. Stat. § 48.193(1)(a)(9); Corp. Creations, 225 So. 3d at 301 ("[S]ections 685.101 and 685.102 allow parties to confer jurisdiction on the courts of Florida by contract alone if certain requirements are met."). Specifically, in order to satisfy Florida's statutory requirements for consent to personal jurisdiction:

> the contract, agreement, or undertaking must (1) include a choice of law provision designating Florida Law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws.

Jetbroadband, 13 So. 3d at 162; see also Hamilton v. Hamilton, 142 So. 3d 969, 971–72 (Fla. 4th DCA 2014). If these five requirements are met, then "personal jurisdiction may be exercised and the courts may dispense with the more traditional minimum contacts analysis." Corp. Creations, 225 So. 3d at 300.

In sum, under Florida law, a Florida jurisdiction conferral clause is a necessary, but not sufficient, component of contractual consent to the court's exercise of specific personal jurisdiction over a non-Florida defendant.

### 2.    The License Agreements and the Personal Guaranty

None of the agreements at issue here contains a provision by which Westover or any Individual Defendant expressly "agrees to submit to jurisdiction of the courts of Florida."  The agreements do, however, all contain a venue provision - known as a "floating forum selection clause" – under which Defendants consent to jurisdiction "IN THE UNITED STATES DISTRICT COURT IN THE FEDERAL DISTRICT WHERE THE PRINCIPAL PLACE OF BUSINESS OF [DOLLAR OR THRIFTY] IS LOCATED IF DIFFERENT FROM [Tulsa, Oklahoma]."  It is undisputed that Estero, Florida – the current principal place of business of Dollar and Thrifty - is located here, in the Fort Myers Division of the Middle District of Florida.  The agreements also contain provisions by which the parties "IRREVOCABLY WAIVE ANY OBJECTIONS WHICH THEY MAY NOW OR HEREAFTER HAVE TO THE PERSONAL JURISDICTION OR VENUE OF ANY SUIT, ACTION OR PROCEEDING, ARISING OUT OF OR RELATING TO THIS AGREEMENT, BROUGHT IN SUCH COURTS."

The operative question is thus whether either a floating forum selection clause or a personal jurisdiction waiver amounts to "a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida."  Plaintiffs argue that they do, but have not presented any binding precedent to support

that position. Given that "Florida's long-arm statute is to be strictly construed," Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996), the Court has its doubts - particularly since no Florida connection existed when the parties executed these agreements.[10] Cf. McCrae, 511 So. 2d at 543 (disallowing the exercise of personal jurisdiction on grounds not explicitly set forth in Florida's long-arm statute).

Ultimately, however, the Court need not resolve this issue. Even if a floating forum selection clause and/or a personal jurisdiction waiver does satisfy the "agrees to submit to the jurisdiction of Florida" requirement, Plaintiffs' consent argument still fails, since none of the agreements at issue also "include[s] a choice of law provision designating Florida Law as the governing law."[11] The Personal Guaranty states that it is to be "governed by the laws of the State of Oklahoma." (Doc. #58-3, p. 3.) The Dollar License Agreement states that Oklahoma law governs the "existence, validity, construction and sufficiency of performance

_____

[10] The Court notes, however, that floating forum selection clauses have been deemed enforceable under Florida law for purposes of assessing whether a lawsuit was filed in a proper venue. Lopez v. United Capital Fund, LLC, 88 So. 3d 421, 425 (Fla. 4th DCA 2012); Bovis Homes, Inc. v. Chmielewski, 827 So. 2d 1038, 1039 (Fla. 2d DCA 2002).

[11] It is also not clear whether the $250,000 consideration requirement is met. Fla. Stat. § 685.101(1). Plaintiffs claim that "there can be no question that the obligations under the contracts at issue, pursuant to which Westover undertook the obligation to operate Dollar and Thrifty businesses for a term of 10 years . . . exceeded $250,000" (Doc. #60, p. 18), but they have not presented the Court with any supporting figures.

of this Agreement," except as to issues implicating the non-compete provision, which are "governed by the laws of the state where [Westover is] operating," i.e. New York.  (Doc. #58-1, ¶ 24.1.) Oklahoma law also governs the Thrifty License Agreement (Doc. #58-4, ¶ 10.9.)  The Amendment makes certain changes to those License Agreements but keeps Oklahoma as the governing law.[12]  (Doc. #58-2, ¶ 18.)

Because contractual consent is the only basis for personal jurisdiction over the Individual Defendants raised in the Second Amended Complaint (Doc. #58, ¶ 18), each Individual Defendant is now dismissed without prejudice for lack of personal jurisdiction. The Court now turns to whether there exists another basis on which to assert specific personal jurisdiction over Westover.

## C.  Specific Personal Jurisdiction over Westover

Plaintiffs argue that the Court has specific personal jurisdiction over Westover under Sections 48.193(1)(a)(1) and 48.193(1)(a)(7) of Florida's long-arm statute.  For the reasons that follow, the Court disagrees.

---

[12] The VPPA does, in contrast, contain a Florida choice-of-law provision but, unlike the License Agreements and Personal Guaranty, it does not contain a floating forum selection clause or personal jurisdiction waiver.  Plaintiffs' briefing advances the novel argument that the VPPA, License Agreements, and Personal Guaranty should be viewed as one contractual "undertaking" for purposes of satisfying all of the statutory requirements for jurisdictional consent.  The Court need not determine whether this "one undertaking" argument has merit, since as discussed above, the VPPA cannot be considered in assessing the Court's personal jurisdiction.

**(1)  Section 48.193(1)(a)(1) – Conducting Business in Florida**

One who "[o]perates, conduct[s], engag[es] in, or carr[ies] on a business or business venture in [Florida]" submits himself to the *in personam* jurisdiction of Florida courts.  Fla. Stat. § 48.193(1)(a)(1).  This provision is strictly construed, and the overarching question is whether the facts "show a general course of business activity in the state for pecuniary benefit." Sculptchair, 94 F.3d at 627 (11th Cir. 1996); Travel Opportunities of Fort Lauderdale, Inc. v. Walter Karl List Mgmt., Inc., 726 So. 2d 313, 314 (Fla. 4th DCA 1998).  Relevant factors to consider "include the presence and operation of an office in Florida, the possession and maintenance of a license to do business in Florida, the number of Florida clients served, and the percentage of overall revenue gleaned from Florida clients."  Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*,* 421 F.3d 1162, 1167 (11th Cir. 2005) (citations omitted).

The Second Amended Complaint avers that the Court has personal jurisdiction over Westover under this subsection because Westover engaged in certain business actions that "constitute sufficient contacts" with Florida.  (Doc. #58, p. 5.)  In moving to dismiss, Defendants stress that "Westover's business consists of renting cars and parking cars in the Western New York area," and that not only has Westover never maintained a Florida office or business presence, it never actively solicited business from Florida residents.  (Doc. #59, pp. 11-12; see also Docs. ## 59-1; 59-2;

59-3; 59-4; 59-5.)  Plaintiffs do not challenge these contentions, let alone rebut them with any evidence of a Florida business license or presence.  Instead, Plaintiffs argue that personal jurisdiction appropriately lies under Section 48.181(1)(a)(1) because Westover: (i) sent a representative to Florida for a "an intensive three-day training program . . . designed to boost licensee sales," (ii) "directed" the "termination of its franchises" to Florida, and (iii) entered into an agreement for the purchase of vehicles (the VPPA) after Hertz had relocated to Florida.  (Doc. #60, pp. 2-3.)

None of this sufficient.  That Westover sent a representative to Florida for a training program does not rise to the level of demonstrating a general course of business activity in Florida for pecuniary benefit.  Aronson v. Celebrity Cruises, Inc., 30 F. Supp. 3d 1379, 1385-86 (S.D. Fla. 2014); Insight Instruments, Inc. v. A.V.I.-Advanced Visual Instruments, Inc., 44 F. Supp. 2d 1269, 1271 (M.D. Fla. 1999).  Indeed, it was Hertz who requested the presence of a Westover representative at the training program – presumably so Westover could increase its business in New York, where Westover is based.  (See Doc. #60-3.)  Nor does the fact that Westover sent a letter terminating the franchise relationship to Florida mean that Westover was broadly engaged in a Florida

business venture.[13]  <u>Virgin Health Corp. v. Virgin Enters. Ltd.</u>,

393 F. App'x 623, 626 (11th Cir. 2010) (per curiam) (sending cease

and desist letter to Florida did not show defendant "carried on

business" in Florida).

Plaintiffs have failed to carry their burden of establishing

that Westover carried on a business or a business venture in

Florida.  <u>Horizon</u>, 421 F.3d at 1167-68 (affirming finding that

defendant was not "conducting business" in Florida where defendant

"physically performed all its work from its California offices"

and earned less than five percent of its gross revenue from Florida

residents); <u>Parker v. Century 21 J. Edwards Real Estate</u>, 183 F.

App'x 869, 871 (11th Cir. 2006) (per curiam) (exchanging three

emails with a Florida resident and using Florida-based freight

forwarders did not establish a Florida "business venture").  As

such, Section 48.193(1)(a)(1) cannot serve as a basis for asserting

personal jurisdiction over Westover.

---

[13] The VPPA – were it properly considered here – would present a
closer call. Nonetheless, the activity relating to that agreement
would still probably not rise to the level necessary to permit the
Court to exercise specific personal jurisdiction over Westover.
The face of the VPPA does not require performance in Florida, and
the documents attached as exhibits to the declaration of Hertz's
North America Fleet Management team's Vice President, Darren
Arrington, indicate that Westover did not purchase vehicles from
Florida nor remit payments to Florida; rather, the vehicles came
from Indiana, Colorado, and Minnesota, and the payments went to
Minnesota and Virginia.  (<u>See</u> Doc. #60-4.)  Additionally, the
"fortuitous" fact that the Hertz fleet management agent with whom
Westover coordinated its vehicle purchases is a Florida company is
seemingly insufficient to convert Westover's New York operations
into a Florida business venture. <u>See</u> <u>Walden v. Fiore</u>, 134 S. Ct.
1115, 1122-23 (2014).

**(2)  Section 48.193(1)(a)(7) – Breach of a Contract Requiring Acts to be Performed in Florida**

The final ground on which Plaintiffs base personal jurisdiction over Westover is Westover's alleged failure to perform acts that it was, according to Plaintiffs, contractually required to perform in Florida.

"[I]ndividuals submit themselves to the jurisdiction of Florida for any cause of action arising from a breach of contract for failure to perform acts required by the contract to be performed in this state." Olson v. Robbie, 141 So. 3d 636, 639 (Fla. 4th DCA 2014) (quoting Fla. Stat. 48.193(1)(a)(7)). However, for the exercise of jurisdiction over a nonresident or foreign corporation to be appropriate under subsection (1)(a)(7), "there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute." Posner, 178 F.3d at 1218.  As with the other provisions of the long-arm statute, "[t]his provision must be strictly construed in order to guarantee compliance with due process requirements." Olson, 141 So. 3d at 640 (quotation omitted).

As far as the Court can tell, the two specific "Florida" breaches alleged are Westover's failure to remit licensing fees before terminating the franchise relationship (Count I) and

failure to provide Plaintiffs with timely notice of that termination (Count V).[14]  The Court addresses each in turn.

### (a)  Contractual Obligation to Pay Franchise Fees

Under the License Agreements, Westover was required to send Plaintiffs certain fees associated with Westover's franchise revenues.  The Second Amended Complaint alleges that, when Defendants terminated the franchise relationship in March 2016, Westover had outstanding obligations, which it has since refused to pay.  (Doc. #58, ¶¶ 42, 26.)  Defendants submit that any putative breach of this obligation does not support personal jurisdiction under Section 48.193(1)(a)(7) because Westover was required to – and did – send all payments to Oklahoma, not Florida,.  Plaintiffs respond that, since Florida was their place of business in 2016, Florida was the contractual place of payment.

While the License Agreements do not expressly designate a "place of payment," there is a "legal presumption that a debt is to be paid at the creditor's place of business."  Laser Elec. Contractors, Inc. v. C.E.S. Indus., Inc., 573 So. 2d 1081, 1083

---

[14] Plaintiffs' Response in Opposition to Dismissal also contends that Westover breached by failing to immediately return "proprietary corporate materials" to Dollar and Thrifty, but that allegation is not found in the Second Amended Complaint.  Even if it were, it would not change the Court's analysis or ultimate finding that there is no personal jurisdiction over Westover, since the License Agreements do not state where Westover is to send those materials.  Hamilton v. Alexander Proudfoot Co. World Headquarters, 576 So. 2d 1339, 1340 (Fla. 4th DCA 1991) (defendant's alleged breach of contractual requirement to return materials to previous employer did not support personal jurisdiction where contract did not indicate place of return).

(Fla. 4th DCA 1991) (quotation omitted); see also Am. Univ. of the
Caribbean, N.V. v. Caritas Healthcare, Inc., 484 F. App'x 322, 327
(11th Cir. 2012) (per curiam) ("Under Florida law, a debtor
presumptively has to pay a creditor at the creditor's place of
business, absent a contractual provision stating otherwise.").
But although this presumption can alone "satisfy the language of
Florida's long-arm provision that refers to contractual acts
'required' to be performed in Florida," Laser, 573 So. 2d at 1083,
so too can the presumption be rebutted with evidence showing that
payments were in fact required to be sent elsewhere. See Posner,
178 F.3d at 1219; Caritas Healthcare, 484 F. App'x at 327.

Such is the case here. Even if the Court initially presumes
that, after Plaintiffs relocated, Westover was expected to send
its payments to Florida, the affidavit of Glenn Gawronski (Doc.
#59-8), an individual with firsthand knowledge, sufficiently
rebuts this presumption.[15] According to Mr. Gawronski, even after
Plaintiffs' relocation, Westover continued to remit all payments
"to DTG Operations, Inc. in Tulsa, Oklahoma as directed by
plaintiffs. [Westover] did not send checks to Florida."[16] (Id. ¶
3.) Though Plaintiffs deny this contention, they have produced
no evidence supporting such denial. Accordingly, Plaintiffs have

---

[15] Mr. Gawronski works for a company that "performed accounting and
administrative work for Westover." (Doc. #59-8, ¶ 2.)

[16] This assertion is supported by the four Dollar/Thrifty invoices
attached to Mr. Gawronski's affidavit (id. pp. 5-8) – one from
2013, one from 2014, and two from 2015 – which instruct Westover
to remit payment to DTG Operations in Tulsa.

failed to carry their "ultimate burden" of establishing that Westover breached an obligation to pay Plaintiffs in Florida. Oldfield, 558 F.3d at 1217.

> **(b)  Obligation to Provide Timely Notice of Termination**

The Second Amended Complaint also asserts that Westover "failed to provide Dollar and Thrifty the required notice of its intent to terminate the Dollar and Thrifty License Agreements in accordance with the time periods required."  (Doc. #58, ¶ 58.) Plaintiffs contend that Florida was the termination "place of performance," as illustrated by the fact that Westover sent its communications about the termination to Hertz in Florida.

It is true that Westover's pre- and post-termination communications with Hertz were mailed to Florida.  (Docs. ## 58-8, pp. 2, 5; 58-10.)  However communications regarding the termination are not notice of the termination.  As to the latter, the License Agreements clearly require "[a]ll notices, communications and approvals" to be sent to Tulsa, Oklahoma.[17] (Docs. ## 58-1, p. 30; 58-4, pp. 23-24.)  In compliance therewith, Westover's official notice of termination was sent via certified mail to Tulsa.  (Doc. #58-6.)  Thus, even if Westover did breach the License Agreements by failing to provide timely notice of termination, that breach was – so to speak – an Oklahoma one.  See Olson, 141 So. 3d at 640; Hamilton, 576 So. 2d at 1340.

---

[17] Either party could "designate another address at any time by delivery of notice to the other," but there is no evidence that this in fact occurred.

In short, none of the statutory grounds cited by Plaintiffs suffice to allow this Court's exercise personal jurisdiction over Westover. Consequently, the Court need not address whether Westover had the requisite "minimum contacts" with Florida, "so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment." Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006) (quotation omitted). Like the Individual Defendants, Westover must be dismissed from this action.

Accordingly, it is hereby

**ORDERED:**

1. Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint for Lack of Personal Jurisdiction (Doc. #59) is **GRANTED**. This case is **dismissed without prejudice**.

2. Defendants' Alternative Motion to Transfer Venue (Doc. #59) is **denied**.

3. The Clerk shall terminate all deadlines and close the case.

**DONE and ORDERED** at Fort Myers, Florida, this 16th day of November, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record